Good morning, Your Honor. I'm John Thiel, Jr., appearing on behalf of Appellant Ultrasystems. This matter has been briefed extensively. I'm going to really try not to repeat what was said in our brief. This is a case which can affect thousands of small businesses and potentially billions of dollars worth of contracts in the state of California. The contracts in this case relate to the California High-Speed Rail Authority project, which is one of the largest projects ever in the state of California, maybe even in the United States. The California Prompt Payment Act provides that late penalties owed by the High-Speed Rail Authority to STV, which was the prime contractor on this project, continue to accrue until the High-Speed Rail Authority submits a claim schedule to the controller for payment or until the authority actually pays STV directly. In other words, the late payment penalties that we're talking about here are accruing as we speak. They've been going on for years, and they will continue to accrue until these events happen that are set out in the Prompt Payment Act set of statutes. The legislature has set up mechanisms to assure that late payment penalties are paid, and it's set up what should have been a foolproof method to make sure that contractors doing business with the state are paid promptly. Pursuant to the act, the High-Speed Rail Authority should have paid STV's invoices within 45 days of their submittal, but it didn't. Pursuant to the Prompt Payment Act, the authority should have automatically paid STV some prescribed penalties when it failed to pay STV within that 45 days, but again, it didn't. If the High-Speed Rail Authority had paid STV as it was supposed to under the Prompt Payment Act, we wouldn't be here because the authority would have paid STV. STV then would have been obligated to pay Ultrasystems within 15 days of its receipt of money from the High-Speed Rail Authority. But unfortunately, that didn't happen. My client suffered substantial financial hardship because its invoices were not being paid within the approximate 60 days that we've outlined in the briefs. We get the 60 days because under the statute, STV was supposed to be paid within 45 days. Then when STV was paid, STV was supposed to pay Ultrasystems within 15 days. So when Ultrasystems went into this project as a subcontractor to STV, it had a very realistic expectation of having its invoices paid within approximately 60 days. Now, in this particular case, I had to go back into the legislative history for the Prompt Payment Act. I'm just still trying to figure out, what's your claim? Well, there are two claims. I don't, you know, I'm not quite, I understand everything. I read your briefs and I read the statutes, but I'm trying to understand what your claim is. The claim is for the late payment penalties that STV should have collected from the State of California and should have paid pro rata to Ultrasystems. So where is that in the contract? It isn't in the contract. What is in the contract is there. So I thought this was a breach of contract claim. It started out as, under the first amendment complaint, which was filed in the district court, as a claim for breach of contract on the theory that the provisions of the Prompt Payment Act in the contract between STV and the State of California were incorporated by reference into the contract between STV and Ultrasystems. And that's no longer the theory? Well, it's still a theory. That motion was brought by STV to dismiss that claim, which the district court granted. Our appeal says that's a viable theory that we should be able to pursue. So is that your argument today? The second argument today, Your Honor, is that STV The one you just outlined right now, is that what you're, are you still advocating that theory today? That 927 was effectively incorporated by reference into the contract. That's right. The second theory, which You want to tell me how that was accomplished? Well, through the language in the contract between STV and Ultrasystems, the language, the particular provision of the contract between STV and the State of California was incorporated by reference. Under that contract, it specifically stated that STV was to be paid in accordance with Government Code Section 927. The theory is, is that STV had the obligation to pay Ultrasystems the same prompt payment penalties that were owed by the State of California, if it failed to pay Ultrasystems' invoices within 60 days. All right. So that's the incorporation by reference, that STV had the same obligation to pay you that the State had to pay STV. Correct. Okay, now you have another theory. The other theory is, is the one that advanced below. When STV brought a motion to dismiss, Ultrasystems opposed the motion and asserted that if given leave to amend, it would assert a theory based on the same factual situation that STV had an implied obligation under its contract with Ultrasystems to collect the prompt payment penalties due from the State of California and share them pro rata. So that's... Go ahead. No, go ahead. So the question is, what is the theory that you would have asserted had the judge given you the opportunity to amend your complaint? Breach of the implied obligation under the STV-Ultrasystems contract to do what the contract presupposed that STV would do, namely collect the prompt payment penalties from the State and share them pro rata with Ultrasystems. Okay. Now, does that theory, the breach of good faith, implied good faith and fair dealing, does the viability of that theory turn on the viability of your theory that 927 was incorporated by reference into the contract? I don't believe so. How is it a standalone theory separate from your contract theory? Because under the contract between STV and Ultrasystems, STV had the obligation to act in good faith under the Prompt Payment Act. The State of California was automatically required to pay the prompt payment penalties to STV. STV did not pursue the collection of those prompt payment penalties. And it's Ultrasystems' theory that one of the reasons that this was done was that STV had multimillion-dollar contracts with the State of California in connection with the High-Speed Rail Authority project that the High-Speed Rail Authority had a very limited budget. And by not pursuing the collection of these late payment penalties, STV would rock the boat and would continue to receive this ongoing set of contracts for the High-Speed Rail project. STV was in a much better position to absorb the failure to pay prompt payment penalties than was my client. My client is a woman-owned, small business, disadvantaged business enterprise and suffered substantial financial hardship because of the fact that... What would your amended complaint have said? We're now adding a count that there's a breach of contract or there's a breach of the implied warranty of good faith and fair dealing because... STV should not have waived the prompt payment penalties that were due to it to the disadvantage of my client, Ultrasystems. That's what would have been pled. They had an obligation to share those penalties? Ultrasystems' argument is, equitably, yes. Wouldn't that be adding a new provision to the contract? Well, there's nothing in the contract with regard... But you can't use a breach of the covenant of good faith and fair dealing to add new terms to the contract. That's exactly what you'd be doing. Well, we're not adding new terms to the contract, actually. Is there anything in the contract today that says you have to share penalties and you have to go after them and you have to share them with us? Well, it would be inequitable to allow STV... That's not my question. Is there anything in the contract that says STV has to share penalties they get from the rail authority? I would say explicitly, no. Okay. Implicitly, because of the incorporation of the prompt payment act. You're back to what Judge Friedman asked. They do tie together because of the incorporation by reference and the fact that the prompt payment statute system even exists. That's my question. I mean, I think that the question for us on your second issue is recognizing the liberality of permitting amendments under Rule 15. Would this amendment have been futile? And if this theory that the judge did not let you add is tied to the incorporation of 927 in some way and further, if we disagree with you on the incorporation of 927, then doesn't it necessarily follow that permitting an amendment would be futile? And that's what I think we're both trying to get at. Tell us why it wouldn't be futile if you lose on your first argument. Well, the argument that we would have put forward if we'd been allowed to amend the complaint, as I said before, is that there would have been an implied obligation on the part of STV to collect and share prompt payment penalties with its subcontractors, in this case Ultrasystems, that it would be inequitable in two sense for Ultrasystems, excuse me, for STV not to collect the money because it worked to the detriment of Ultrasystems. And also it would have been inequitable for STV to collect prompt payment penalties based in large part on invoices from my client and many other subcontractors and then not be obligated to share those prompt payment penalties with the subcontractors. I mean, it would be a terrific windfall to STV to be able to collect all that money and not have to share it with the people that really composed the invoices to the State of California. But they wanted to waive it. That's what's peculiar. We want to maintain good relations with the high-speed rail authority. There's future contracts coming. Yes. We'll just forget about all these penalties. I have a big question as to why you would walk away from that much money. I mean, we never got to the discovery stage in the case. I'm just asking the question. Pardon me? I'm just asking the question. All right. The reason I feel that they didn't is that the State of California had limited resources for this project. Under the prompt payment statute, if the high-speed rail authority had to pay out the prompt payment penalties, it was not allowed to go back to the State of California and ask for more money for this project just because it had to pay the late payment penalties. All right. It was just a side question. It was a sideways question. It really wasn't meant to. Okay. You want to save some time for rebuttal? Yeah, I would like to save a couple minutes for rebuttal. Okay. Thank you. May it please the Court, Robert Campbell, Cox, Castle, and Nicholson, on behalf of the Respondent and Defendant, STV Incorporated, and I'm here with my colleague, Trevor Potter, who participated in drafting the brief. Your Honor, I want to start by, first of all, putting things into perspective. I think it's evident from your comments that you understand the factual background. And let me say that when I use the term consultant agreement, I'm referring to the prime contract, that is, the contract between the State agency and STV. And when I use the term subconsultant agreement, I'm referring to the agreement between STV and Ultra Systems. STV contracted with the State. The State, that contract has a provision in it that says that Section 9, that we shall pay in accordance with Section 927, which the Court has indicated it has read. As the Court no doubt knows, that section only applies to the State's obligations to STV. It has absolutely no application whatsoever to STV's obligations to its subconsultant. None at all. Couldn't you by contract say, well, we want the same benefits under that statute? Absolutely, Your Honor. Parties can negotiate. Absolutely. They could have negotiated such a provision, but they didn't. And nowhere in the prime agreement or in the subconsultant agreement will you find any provision whatsoever which indicates any obligation by STV to pay prompt payment penalties to Ultra Systems. And I'd like to first note a series of admissions which, when you pull them together, are just completely fatal to the cause of action for breach of contract. First of all, the consultant agreement does not state anything with respect to payment to Ultra Systems. It doesn't say anything about it. And therefore, if there's nothing in there that addresses payment, inferentially and implicitly there's nothing in the prime contract in the consultant agreement that obligates the payment of prompt payment penalties. The record is completely bereft of any statement anywhere that the prime agreement obligates STV to pay prompt payment penalties to Ultra Systems. No one is contended otherwise. In addition, the subconsultant agreement does not provide for the payment of prompt payment penalties. That's set out very plainly in the plaintiff's brief at page 18. How about the agreement? How about the documents themselves? I'm coming to that. If you go to the subconsulting agreement, there are some attachments. There is, Your Honor. Let me address that specifically. In the ‑‑and this is at the excerpt of record. It's volume 2 at page 123. Subpart J. Right. Got it. Right here. Says payment will be made in accordance with and within the time specified in government code chapter 4.5 commencing with section 927. Right. Okay? That's all it says. Doesn't say anything more than that. And so what does section 927 say? Okay. If you turn to section 927, and it quite clearly states it only applies to state agencies' obligations to their contractors. The only place in the California Prompt Payment Act where there is any discussion at all about the contractor, or in this case the design professional's obligation to pay a subconsultant, is in 927.10. And there you will see a very plain statement that the state encourages. It doesn't require, but it encourages the vendor to pay its subconsultants promptly. But what does that sentence at J mean? Payment will be made in accordance with and within the time period specified. So does it have any significance at all? It has no significance whatsoever to ULTRA systems. Keep in mind, this is not in the subconsultant agreement. This is just in the prime agreement. But it was attached to the subconsultant agreement. That's correct. And the subconsultant, I believe it's in the subconsultant agreement, says that applicable provisions will be incorporated by reference. Applicable provisions. And the district court correctly observed that this is not an applicable provision. Quite clearly it's not applicable because it doesn't require, it only applies to the state's obligations. It doesn't apply to the obligations of STV. The tortured argument that has been made by ULTRA systems is that the plain language of the act should be changed by this court. It should be completely changed to say something it doesn't say. It only applies to the state's obligations. It doesn't apply to STV's obligations to its subconsultants by its very terms. And I want to point out to your honors also that there is, ULTRA system concedes that there is no legal authority whatsoever. There's no case authority. There's no statutory authority other than this tortured interpretation of section 927, which would obligate STV to make prompt payment penalties to ULTRA systems. And in fact, it goes, council argued that this can affect small businesses and billions of dollars in construction agreements. And that's the danger here. Because what they're asking you to do would have implications far beyond this case. Because what they're effectively saying is that STV, a prime contractor or in this case a prime consultant to the state, has co-equal obligations, is effectively the guarantor of prompt payment penalties even when they are not paid to that prime contractor. So in other words, and your honors will note that there are prompt payment statutes throughout the various codes in California. The government code, business and professions code, and the civil code have various prompt payment penalty statutes. And they're similar. The one thing that they all require that once a vendor is paid in full, like STV, they have an obligation to promptly pay their subcontractors or subconsultants. And by the way. Is there anything in the subprime subcontract agreement that imposes any time limits or any? Well, your honor, we don't even need to address that, yes. But there's no reason to address it because it is conceded that once STV was paid, it paid timely. Footnote 2 of the appellant's brief clearly says STV, once it was paid, promptly paid. We complied with the statute. We're in section. So STV's obligation to pay the sub didn't kick in until STV received payment on its invoices? Pursuant to the contract, that is correct. So you. And we did pay promptly once we were paid. His argument is that you either waived your right to prompt payment for the state or dragged your feet with respect to prompt payment for the state from some other reasons that probably aren't in the record that somehow violates either the current, the contract, or would give him a cause of action for violating the implicit warranty of good faith and fair deal. Yes, your honor. Let me respond to both parts of that. First of all, the statutes, the prompt payment penalty statutes, are only triggered when the prime contractor or prime consultant here, STV, is first paid by the state. And that makes sense because the penalties kick in. Once you're paid on behalf, or STV is paid on behalf of Ultra Systems, it has an obligation to promptly pay its downstream vendors. That occurred here. That is not in dispute. It is conceded that once STV was paid, it promptly, under the statutes, paid Ultra Systems. Again, it's conceded. The question then is, and I will go to the question that was asked, whether or not the breach of the implied covenant of good faith and fair dealing turns on the viability of the breach of contract claim. It absolutely does. Under the Gus versus Bechtel case, the Racine case, and others, they quite clearly state that the purpose of the covenant of good faith and fair dealing is so that one party cannot deprive the other, frustrate their ability, that is, to the benefits of the underlying contract. Here, the underlying contract does not provide for prompt payment penalties. So there is no, so quite clearly, in the absence of such an obligation, under the subconsultant agreement here, and I think it's pretty clear that the subconsultant agreement does, in no tortured way, provides for the payment of prompt payment penalties. Because that obligation does not exist, the covenant of good faith and fair dealing cannot independently create that obligation because it never existed to begin with. And as to your point that it was waived, well, as is pointed out in the papers and is stated quite clearly in the Act, it's not waivable. It was not waived. It's not waivable. They were not collected, that is, the penalties were never collected, for reasons outside of the record. And I think it's... Let me ask you another question. I'm just trying to think through counsel's argument a little bit as I'm listening to you. So he acknowledged that there's no explicit provision that he can rely on. But there was a provision, there was an understanding that STV's obligation to pay wouldn't kick in until they receive payment, right, from the state. Correct, Your Honor. Correct? And that obligation is in the contract. That has to do with payment of the underlying invoices, not penalties, but yes. Right. And I'm going to talk about penalties. Okay. So is there any allegation that STV waited to submit its invoices to the state of California after having received, you know, collected invoices from its subs? Absolutely not. So in other words, I guess what I'm getting at, could there be a claim that they unduly delayed in submitting a request for payment from the state and that breached the implied covenant of good faith and fair dealing? I suppose if a... The answer is I don't know. I haven't thought about that because it's so far beyond the record. And that thought occurred to me when I was listening to you. But I suppose it is conceivable that if the facts showed, which they don't here, that there was a deliberate effort on the part of STV to not submit ultra-assistance invoices to the state for payment, I suppose that might make out some sort of claim, but it wouldn't assist them on their prop payment penalty claims. And was there in the district court any discussion of what claim the plaintiff would add and the outlines of that claim at the time the motion to dismiss was either briefed or argued? I believe, Your Honor, that yes, there was the argument made in the opposition to the motion to dismiss that they would like to make a claim on the basis of the covenant of good faith and fair dealing. And Judge Pragerson correctly held in his statement of dismissal, his order of dismissal, that it would be futile. So he had the opportunity to consider the question of futility and, in fact, specifically dealt with the question of futility. That is correct, Your Honor. And I want to point one other thing out, too. And that is with regard to the opportunity by ultra-assistance to seek penalties directly from the state, they sued the state. They sued the state for these very penalties. So if they thought that they were somehow the beneficiary of this statute, Section 927, they were given every opportunity to seek those penalties directly from the state. And what did they do? They dismissed the state. They dismissed the state. So here we are, that is STV, stuck between a dispute, stuck between two parties. And we're every bit the victim of the state budget crisis, as ultra-assistance was. We didn't create the state budget crisis. And so arguments to equity should not apply. Okay. Your time is up. Thank you. Thank you, Your Honor. To my knowledge, Your Honor. I'm sorry? To my knowledge, when STV received invoices from ultra-systems, STV did promptly turn around and invoice the state of California. So there's no allegation on the part of the ultra-systems. That's not your theory. That's not our theory. The theory is you take the two of them. Well, we've seen no evidence of that. And my client is very thorough in following these things. You just want to share in the penalties. We want to share in the penalties. That's exactly right. We don't understand why STV would not collect the money from the state of California when it was automatically due. There was no need to even submit a separate invoice under the Prompt Payment Act. It's automatically due. The money continues to accrue. As I said before, it's accruing as we speak here today. Now, counsel raised the question of having ultra-systems having named the high-speed rail authority in its earlier version of the complaint. Predecessor counsel was convinced that there was no privity of contract between ultra-systems and the high-speed rail authority and decided to dismiss that claim without prejudice. I think it was the right call. Our claim is against STV, the party that we were in privity of contract with. And, again, you know, the courts asked about the various contracts. Well, you have to read both contracts together. We have the contract between the state and STV that says Section 927 at SEC will apply. We have the STV ultra-systems contract, which incorporates by reference. The whole understanding of the parties was that STV would be paid promptly by the state of California within the 45 days allowed. So, you know, I've only got a few seconds left here, but the state of California legislature set up a system that's supposed to be foolproof. It said when the invoices are going to be paid, what the penalties would be if you didn't pay it. They set up mechanisms to make sure that games wouldn't be played. Payments had to be made automatically. Couldn't use minor defects in invoices to withhold payment. The state agency could not use a statute of limitations, really, to prevent payment. With ultra-systems position, STV today could submit a claim to the state of California for these late payment penalties. I think we got it. All right. Thank you, Your Honor. Thank you. Thank you for your arguments, counsel. We appreciate your arguments, and the matter will be submitted. Thank you.
judges: Reinhardt, Paez, Friedman